Dr. Joseph **JOHNSON** and George Baker

v.

Dr. G. Leon **NETTERVILLE, Jr.,** both in his Individual and official capacity and the Louisiana State Board of Education, a public body politic.

Civ. A. No. 72–303.

United States District Court,
M. D. Louisiana.

March 15, 1973.

Murphy W. Bell, Baton Rouge, La., for plaintiffs.

William J. Guste, Jr., Atty. Gen., of La., J. Reginald Coco, Jr., Sp. Counsel, of La., Baton Rouge, La., for defendants.

E. GORDON WEST, District Judge:

This case grows out of the unfortunate turmoil that occurred between October 17, 1972 and November 16, 1972 on the campus of Southern University at Baton Rouge, Louisiana. In the wake of what plaintiffs describe as "nonviolent protests" of boycotting students, two students died, many valuable and important records in administrative offices were completely destroyed, buildings and furnishings were damaged and destroyed, and the entire educational process at the University was forced to a halt. At all times here involved, the plaintiff, Dr. Joseph Johnson, was employed by Southern University as a physics professor and as head of the Physics Department at the University, and the plaintiff, George Baker, was employed as an assistant professor of electrical engineering. The boycott of classes by a large number of students came to a climax on November 16, 1972, when, during a confrontation between the boycotting students and law enforcement officers, two students were shot and killed. On the following day, November 17, 1972, acting under the authority granted him by LSA–R.S. 17:3103, Dr. G. Leon Netterville, Jr., President of Southern University, terminated the employment by the University of both of the plaintiffs. The pertinent part of that statute reads as follows:

"Any student, member of the faculty, administrative official or other employee of any institution of higher learning of this state who:

"(1) Organizes, and/or participates in, and/or holds himself out to be a part of any demonstration, protest, riot or other activity on or immediately adjacent to the grounds of any such institution, the effect of which is willfully to interfere with or disrupt the normal educational process or administration at such institution; or

"(2) Enters into any building or structure of such institution alone or as a member of a group, when the effect of such entry into or presence within the building or structure is willfully to interfere with or disrupt the normal educational process or administration at such institution; or

"(3) * * *

"(4) * * *

"(5) In any way willfully and directly aids, abets or encourages any of the foregoing acts may be expelled or dismissed from such institution effective immediately upon written notification of expulsion or dismissal signed by the president or his designated representative and delivered by registered mail at the last known address of the recipient. Any person so dismissed or expelled shall have the right to appeal the decision by which such action was taken. All appeals shall be heard by a panel which shall be composed of the members of the governing authority of the institution of higher learning;

provided, however, that either or both of said authorities may adopt rules and regulations authorizing the president of the governing authority to appoint a special panel, composed of not less than three nor more than five members of the governing authority, to hear any appeal presented to it, and in such case the decision of the special panel shall constitute the decision of the governing authority in the same manner and to the same extent as if the hearing had been before the whole membership of the governing authority."

Notice of termination, specifically setting forth the grounds therefor, in accordance with the requirements of L.S.A.–R.S. 17:3104, was sent to and received by both plaintiffs. That statute provides:

"The notice of expulsion or dismissal shall specifically set forth the ground or grounds upon which expulsion or dismissal is based, as well as contain a short and clear statement of the facts upon which the expulsion or dismissal is based. In addition, the notice shall inform the recipient that he may, within thirty days after the date of expulsion or dismissal order, request a hearing before the governing authority of the particular institution of higher learning in which he is enrolled and/or employed. The hearing before the governing authority shall be held and its decision rendered not later than thirty days after the date of the request for such hearing by the individual concerned."

These notices, which were sent to the plaintiffs, did not, however, inform the plaintiffs of their right to request a hearing before the Louisiana State Board of Education, which is the governing authority of Southern University, or a panel thereof appointed to hear appeals presented to it, as is required by the above quoted statute. While such a notice of right to appeal is specifically provided for in that statute, its omission from the notices of termination sent to the plaintiffs are not made the basis of

their complaints here. While there is no question that this notification was not contained in the dismissal notices, the plaintiffs, in their sworn testimony before this Court, stated that they were well aware of their right to appeal to the governing authority of Southern University, but that they knowingly, purposely, and on advice of counsel elected not to avail themselves of that right. Instead, they voluntarily elected to file this suit seventeen days after notice of their termination despite the fact that they still had thirteen days left within which to request a hearing before the State Board of Education.

■ In the hearing before this Court, and in the arguments and briefs of counsel, it is not a denial of *post*-termination hearing that is complained of, nor is it a failure to give written notice of their right to such a hearing that is complained of. The plaintiffs bring this suit claiming a violation of their rights because they were not given a hearing *before* they were terminated. They allege that this constitutes a denial of due process of law, and that it is a violation of a *University policy* which states that "There will be no summary dismissal of faculty without academic due process in accordance with the 1958 American Association of University Professors statement of academic due process." Whatever the University statement of policy might have been, it could not, of course, as a matter of law, supersede the unambiguous language of the State statute. All of the due process of law required by the United States Constitution is accorded a dismissed faculty member by the provisions of L.S.A.–R.S. 17:-3103–3104. These two statutes provide, under the circumstances therein set forth, for the immediate dismissal of a faculty member, and they then provide for the right of administrative appeal within thirty days. They further require that an appeal, if taken, must be heard and a decision rendered thereon within thirty days from date of request for appeal hearing. Certainly these time limits are reasonable, and nothing in the

statutes prevents an appeal to the courts after exhaustion of administrative remedies provided for. If the President of the University violated some University policy when he terminated the plaintiffs' employment, that would be a matter for determination on appeal to the State Board of Education. Constitutional due process requires no more than is provided for by the statutes hereinabove quoted. There is nothing unusual or unconstitutional about a statute that requires a complainant to exhaust a right of administrative appeal before he has access to the courts, so long as the right to administrative appeal is reasonable and is not designed to unduly delay or frustrate the complainant's right to a prompt resolution of his complaint. It could not be argued that the administrative appeal provided for by these statutes is either cumbersome or designed to delay or frustrate plaintiffs' right to be heard. On the contrary, the right of administrative appeal is granted by these statutes for the purpose of allowing a complainant to be heard and for the further purpose of allowing the State Board of Education an opportunity to settle grievances among its employees, if possible, without the intervention of outside agencies such as the courts. This is as it should be. In Love v. Pullman Company, 404 U.S. 522, 92 S.Ct. 616, 30 L.Ed.2d 679 (1972), the Court held that a person claiming to be aggrieved by a violation of Title VII of the Civil Rights Act of 1964 could not maintain a suit in the Federal District Court until he has first unsuccessfully pursued certain available avenues of potential administrative relief. The same is true in the present case. The very purpose of granting the right of administrative appeal is to keep these matters out of court if possible, and to permit the agency involved to solve its own problems. They should not be frustrated by the courts in that endeavor. If, of course, they are unable to resolve the dispute, or if it is resolved unsatisfactorily to the complainant, then, of course, the complainant cannot be denied access to the courts.

■ As a general rule, when one knowingly and intentionally elects to forego his right of appeal, he is deemed to have waived that right. Perhaps such a holding should be made here. However, the Court must take cognizance of the specific requirement of L.S.A.–R.S. 17:3104 that a notice of dismissal "shall inform the recipient that he may, within thirty days after the date of expulsion or dismissal order, request a hearing before the governing authority of the particular institution of higher learning in which he is enrolled and/or employed." There is no question but that no such notice was contained in the notices of dismissal sent to the plaintiffs. While there is no doubt but that these plaintiffs were aware of their right of administrative appeal, it is questionable as to whether or not their actual knowledge of their right to appeal can make actual notice of that right as required by the statute unnecessary. Such a doubt should be resolved in favor of the plaintiffs, but under the facts and circumstances of this case, they should not be relieved of their obligation to pursue their right of administrative appeal before they seek the intervention of the court. Also, simple justice would seem to demand that these plaintiffs be given the opportunity to be heard by the governing body of Southern University, if they wish, so that that body might give due consideration to the applicability of any University policies that might have been in existence at the time these plaintiffs were terminated as well as to the merits of the case involving their termination, and that a complete record of any such hearing, if held, be made.

It is therefore the opinion of this Court that judgment should be rendered in this case giving the plaintiffs thirty days from the date of judgment herein to request a hearing before the State Board of Education, which is the governing body of Southern University, said hearing to be in the nature of an appeal from their dismissal on November 17, 1972, as members of the faculty of Southern University, said hearing to be held,

if requested by the plaintiffs, in accordance with the provisions of L.S.A.–R.S. 17:3103–3104. In all other respects, judgment will be entered herein dismissing the demands of the plaintiffs as having been prematurely brought before this Court.